# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TERRY DOUGLAS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:10CV00188 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Michael J. Newman |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.   Introduction**

Plaintiff, Terry Douglas, brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction to review the administrative denial of his applications. *See* 42 U.S.C. §§405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #7), the administrative record, and the record as a whole.

Plaintiff asserted in administrative proceedings that he was eligible to receive DIB and SSI because he was under a "disability" within the meaning of the Social Security Act. In the present

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

case, Plaintiff seeks an award of benefits.  The Commissioner contends, on the other hand, that an Order affirming the ALJ's decision is warranted.

**II.     Background**

    **A.     Procedural History**

Plaintiff filed his SSI and DIB applications on April 26, 2004[2] asserting that he has been under a "disability" since October 14, 2002.[3]  Tr. 92-94.  Plaintiff claimed to be disabled by a non-union of his right femur, hepatitis C, high blood pressure, depression, and one or more personality disorders.  Tr. 95.

Following initial administrative denials of his applications, Plaintiff received a hearing before Administrative Law Judge (ALJ) Melvin A. Padilla.  ALJ Padilla later issued a written decision concluding that Plaintiff was not under a disability during the closed period here in question -- from October 14, 2002 to May 6, 2006 -- and, therefore, was eligible to receive neither DIB nor SSI.  The Appeals Counsel thereafter denied review, tr. 6-10, and this appeal followed.

    **B.     Plaintiff's Vocational Profile and Testimony**

Plaintiff was 47 years old on his alleged disability onset date and thus considered a "younger individual." He was 51 years old at the end of the closed period of disability, which defined him as a "closely approaching advanced age." *See* 20 C.F.R. §§404.1563, 416.963; *see also* tr. 28.  Plaintiff has a high school education.  *See* 20 C.F.R. §416.964(b)(4); tr. 102.  Plaintiff has past relevant work

---

[2] The administrative decision notes that Plaintiff received SSI from August 1989 to January 1992. Tr. 18, 105.  The record suggests that Plaintiff was jailed for lying on an SSI application. Tr. 344.  The file pertaining to Plaintiff's prior claim could not be obtained.  Tr. 18.

[3] Plaintiff amended his application to request a closed period of disability from October 14, 2002 to May 6, 2006, when he returned to work.  Tr. 18.

2

as a construction worker, and since the alleged onset date, has worked as a dump truck driver. Tr. 96, 108-09A, 110-16.

Plaintiff testified before the ALJ that he fractured his femur in a car accident and was in bed for a year, noting he had a non-union of the fracture. Tr. 659. He indicated that screws were removed and he was "back to square one" for one more year. *Id.* He reported that this second surgery was approximately one year after the accident. Tr. 660. He testified that he had severe pain in the femur and "couldn't even move a fraction of an inch." Tr. 661. He progressed from using a walker to crutches to a cane. *Id.* Plaintiff also testified that he could not perform housecleaning, tr. 667, and it hurt if he walked far. He was most comfortable sitting with his leg propped up or laying down. *Id.* He also testified that he could not maneuver stairs. *Id.* His further claimed that his right leg is smaller and weaker.

Plaintiff reported that six months after the first operation he stopped his pain medication. Tr. 659, 661. After the second operation, Plaintiff reported the pain was the same as at the beginning and his activities were sedentary. Tr. 667-68.

During the relevant period, he added that he fixed food and took care of his personal needs. He noted that he lived for two years in his sister's basement following the second operation and through treatment for his various medical conditions. Tr. 662

Plaintiff further testified that one year after his accident, he began liver therapy to treat his Hepatitis C. The therapy lasted for forty-eight weeks; it was debilitating; and it took him many months thereafter to recover once the treatment finished. Tr. 660, 671-73. He was able to return to work full- time in May 2006. Tr. 673.

Plaintiff acknowledged that his high blood pressure is under control with medication. Tr. 664. He said that he went to the Cassano Health Center for a medical follow-up after the first year of the accident and he had appointments at their orthopedic clinic once a month thereafter. *Id.*

Plaintiff estimated that during the relevant period, he could have walked less than one-half block, stood for less than ten minutes, and sat for thirty minutes, each at a time. Tr. 666-67. He testified that he could have lifted ten pounds. Tr. 667. He climbed stairs one stair at a time. *Id.*

Plaintiff also testified about his depression and other mental impairments. He acknowledged that for "almost six weeks" he did not get out of bed and was suicidal. Tr. 662. He continued to treat at South Community and attend Alcoholics Anonymous. Tr. 663. He also took prescribed medicine to lessen the depression. Tr. 664-65. He testified that the side effects from the psychotropic medication included dry mouth, sexual problems, and insomnia. Tr. 665. He testified that he last drank alcohol or used illicit drugs four and a half years prior to the administrative hearing. Tr. 669. He testified that this is the longest period of sobriety. *Id.* He acknowledged that he was arrested several times in the past for both types of usage. Tr. 670. He denied any work problems secondary to substance abuse. *Id.*

### C. **Medical Source Opinions**

Plaintiff relies on the opinion of Dr. Serio, one of his treating physicians at Cassano Health Center. Plaintiff began treatment for his Hepatitis C in January 2005. Tr. 382-92. He was treated with Interferon and Ribavirin. Tr. 362-92. By July 2005, Dr. Serio reported that Plaintiff showed increased symptoms of depression and advised Plaintiff to continue with his mental health treatment. Tr. 557.

4

Dr. Serio completed a Mental Functional Capacity Assessment in August 2005, reporting that Plaintiff was extremely limited in his ability to (1) maintain attention and concentration for extended periods, (2) perform activities within a schedule, (3) maintain regular attendance and be punctual within customary tolerances, (4) sustain an ordinary routine without special supervision, (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms, (6) perform at a consistent pace without an unreasonable number and length of rest periods, (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (8) respond appropriately to changes in the work setting, and (9) set realistic goals or make plans independently of others. Tr. 550. Dr. Serio opined that Plaintiff's liver treatment was "drastically affecting" him and that, while Plaintiff was being treated by a psychiatrist for these issues, he did not think that Plaintiff could then perform work. Tr. 551. Dr. Serio concluded, however, that Plaintiff's limitations would only last from thirty days to nine months. *Id.*

In determining Plaintiff's physical residual functional capacity ("RFC"), the Commissioner relied on the opinion of Dr. Lorna Stookey, a family practice physician at Cassano Health Center, who completed a Basic Medical form in November 2004. Tr. 398-99. Dr. Stookey reported that Plaintiff could stand or walk for up to two hours a day and ten minutes at one time during an eight-hour workday. *Id.* However, she noted that Plaintiff could not walk consistently due to his leg problems. *Id.* He could sit without limitation. *Id.* Dr. Stookey did not think that Plaintiff could lift more than five pounds frequently or 11-20 pounds occasionally. *Id.* Dr. Stookey indicated that Plaintiff was moderately limited in his ability to push/pull or perform repetitive foot movements due to his femur condition. *Id.* Plaintiff was not significantly limited in bending, however. *Id.* Dr. Stookey opined that Plaintiff needed either "disability or a sit-down job." *Id.* She added that Plaintiff

-5-

-6-

could not do "physical labor." *Id.*

The Commissioner also noted that the opinion of Dr. Danopulos, who evaluated Plaintiff at the request of the Ohio Bureau of Disability Determination, does not conflict with the ALJ's finding that Plaintiff could not return to his past relevant work. The ALJ continued that there is nothing in Dr. Danopulos' assessment that would suggest Plaintiff could not perform a reduced range of light work during the closed period. Tr. 25.

Dr. Danopulos examined Plaintiff in September 2004. Tr. 251-59. Plaintiff used a cane and reported having used it for two years, but Dr. Danopulos found a normal gait without it. Tr. 251, 254. Dr. Danopulos' examination revealed a slight atrophy in Plaintiff's right leg and pain on palpation in the lower part of the anterior thigh. Tr. 254-59. Dr. Danopulos concluded that Plaintiff's leg was stable and that Plaintiff's ability to "do any work-related activities is affected to a certain degree as a construction worker by his right upper leg pain." Tr. 255.

The Commissioner also relies on the opinions of Dr. Goeke and Dr. Lewin, who reviewed the record at the request of the Ohio Bureau of Disability Determination, in December 2004 and in April 2005, respectively. Tr. 266-82. Dr. Goeke found a mild limitation in Plaintiff's daily activities and a moderate limitation in Plaintiff's social functioning, concentration, and persistence or pace, with no episodes of decompensation. *Id.* Dr. Goeke concluded that Plaintiff could perform work so long as such work was limited to nonpublic tasks without strict time or production schedules. *Id.* **III.** **Administrative Review**

    **A.** **"Disability" Defined**

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a) & (d), 1382c(a). The definition of the term

"disability" is the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent the claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* A DIB/SSI claimant bears the ultimate burden of establishing that he or she is under a disability for purposes of the Social Security Act. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### B. Social Security Regulations

Administrative regulations require ALJs to employ a five-step sequential evaluation when resolving whether a DIB/SSI claimant is under a disability. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform their past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### C. ALJ Padilla's Decision

ALJ Padilla's pertinent findings began at Step 2 of the sequential evaluation, where he concluded that Plaintiff had the following severe impairments during the closed period: femur fracture and surgeries; active Hepatitis C with Interferon treatment; dysthymia; and polysubstance abuse in reported remission. Tr. 22.

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Listings. Tr. 24.

At Step 4, the ALJ concluded that Plaintiff retained the RFC to perform light work,[4] *i.e.,* he could lift up to twenty pounds occasionally and five pounds frequently, stand and walk for a combined total of two hours in a workday (with sitting not affected),not be required to use right- foot controls, and just occasionally push or pull. *Id.*

The ALJ further found at Step 4 that Plaintiff's mental impairments limited him to simple and repetitive tasks, and low-stress jobs with no more than minimal contacts with supervisors and coworkers, including no teamwork, and no dealing with the public. *Id.*

The ALJ concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a construction worker. Tr. 28.

At Step 5, the ALJ concluded that, during the relevant period, Plaintiff, despite his limitations, could have nonetheless performed a significant number of jobs in the national economy. Tr. 29.

---

[4]The Regulations define light work as involving the ability to lift " no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §416.967(b).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a "disability" as defined, and was, therefore, eligible for neither DIB or SSI during the closed period in question. Tr. 30.

**IV.     Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are to be upheld if the substantial evidence standard is satisfied, *i.e.,* "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry -- reviewing for correctness of the ALJ's legal analysis -- may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (quoting in part *Bowen v. Soc. Sec.,* 478 F.3d 742,

-10-

746 (6th Cir. 2007), and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    Plaintiff's Contentions

Plaintiff argues that he was disabled during the entire closed period in question. Alternatively, he contends the record evidence demonstrates that he was disabled from January 2005 through May 2006 due to his treatment for Hepatitis C. *See* Doc. #6 at 11. To that end, Plaintiff contends that the ALJ erred in determining his mental RFC by relying on the opinion of the state agency physician, who reviewed the file prior to Plaintiff's Interferon treatment, rather that relying on the opinion of Dr. Serio, his treating physician. *Id.* at 13.

### B.    Medical Source Opinions

#### 1.    Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a non-examining medical advisor or a one-time examining physician or psychologist. *Blakley,* 581 F.3d at 406. A treating physician's opinion is given controlling weight if it is both well supported by medically acceptable data, and not inconsistent with other substantial evidence of record. *Id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley, at id.* More weight is generally

given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). Yet, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. 20 C.F.R. §§ 416.972(d), (f); *see also* Ruling 96-6p at *2-3.

### 2. **Non-Treating Medical Sources**

The ALJ views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *Id*. at *2 - 3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. §416.927(b). The Regulations thus require an ALJs to evaluate non-treating medical source opinions under the factors set forth in §416.927(d) including the factors of supportability, consistency, and specialization. *See* 20 C.F.R. §416.972(f); *see also* Ruling 96-6p at *2 - 3.

### C. **Analysis**

#### 1. **Plaintiff's Alleged Disabilty Onset Date Through January 16, 2005**

Plaintiff has not demonstrated that the ALJ applied incorrect standards of law when evaluating the medical source opinions. *See* Doc. #6 at 11-14.

The ALJ's decision in Plaintiff's case reveals that for the period up to and including January 16, 2005, the ALJ weighed the medical source opinions and other evidence of record under the required legal criteria and reasonably concluded that Plaintiff was not under a "disability" as defined by the Social Security Act. In addressing Plaintiff's mental RFC, the ALJ considered and rejected the opinions of Dr. Serio under the correct legal criteria. Recalling that Dr. Serio thought that Plaintiff was "unemployable" for "between 30 days and 9 months" due to his mental state "not his physical state," tr. 551, the ALJ assigned no controlling or deferential weight to this conclusion because Dr. Serio did not support his opinion with objective medical evidence and because Dr. Serio's conclusion was not supported by the treating psychiatrist reports. *See* tr. 26; *see also* 20 C.F.R. §§416.927(d)(2)-(4). The ALJ also explained that Dr. Serio's opinion was not entitled to any significant weight because he was not a treating physician with respect to any mental impairment. Tr. 25-26. This consideration of the specialization factor is consistent with the Regulations, 20 C.F.R. §416.927(d)(5), and supported by substantial evidence of record. A review of Dr. Serio's opinion confirms the reasonableness of this aspect of the ALJ's decision. The two-page Mental Assessment form Dr. Serio completed does not contain any diagnosis, explanation or references to signs or symptoms to support his opinions about Plaintiff's extremely low mental-work abilities.

Plaintiff next argues that, prior to January 2005, he was disabled by his physical condition. In making his argument, Plaintiff relies primarily on his own allegations. Plaintiff fails to acknowledge, however, that the ALJ did consider Plaintiff's limitations due to his leg fracture. For example, the ALJ noted that Plaintiff recovered from his surgeries, including his use of a cane. *See*

-13-

tr. 22 (citing to tr. 462, 467, 469, 470, 472, 473, 475, 478, 480, 481, 484, and 486). In addition, Plaintiff's surgeon, Dr. Blinski reported good strength in June 2002. Tr. 469. The record also shows that Plaintiff worked from April to December 2003. Tr. 462-75.

Plaintiff further maintains that the ALJ erred by failing to consider, during the time period preceding January 2005, Plaintiff's non-union of his right femur, his difficulty taking pain medications, and his decreased strength and atrophy. *See* doc. #6 at 15-16.

"'There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record.'"*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). Yet, an ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability. "Notably, an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Id.* An ALJ's credibility determinations must be supported by substantial evidence. *Id*.

Regarding Plaintiff's right femur fracture, the ALJ appropriately limited Plaintiff to no more than two hours of walking and five pounds of lifting frequently.

As to the opinion evidence related to Plaintiff's physical RFC, the Court notes Plaintiff failed to identify any opinion that the ALJ did not consider. The ALJ adopted the opinion of treating physician, Dr. Stookey. Tr. 25. Because the ALJ applied the correct legal criteria to his evaluation of the medical source opinions of record, and because substantial evidence supported his evaluation of these opinions, the ALJ reasonably concluded that Plaintiff could perform a substantial number of jobs in the regional and national economy prior to January 2005. The ALJ's decision was within

the zone of reasonable choices. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence... presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts").

The Court thus finds the ALJ's analysis of Plaintiff's disability status support by substantial evidence from the time of Plaintiff's alleged disability onset (October 14, 2002) through January 16, 2005.

### 2. January 17, 2005 through May 6, 2006

The Court reaches a different result, however, concerning the ALJ's analysis for the closed period of January 17, 2005 through May 6, 2006.

On January 17, 2005, Plaintiff began his Hepatitis C treatment, which was delayed for two years due to his car accident. Tr. 387. As Plaintiff's counsel convincingly argues in his Statement of Errors:

> ALJ Padilla ignores the fact that at the time Dr. Serio offered the opinion, Mr. Douglas had already undergone eight months of Interferon treatment. Tr. 386-87. It would be another four or five months before Mr. Douglas completed treatment, and another four months after that before Mr.Douglas felt that he had recovered from the effects of the Interferon treatment. Tr. 672. Duration was not an issue, since Mr. Douglas's Interferon treatment and recovery time constituted a 15-month period of disability. As to the first claim, there is no evidence in Dr. Serio's report that suggests he relied solely on Mr. Douglas's subjective complaints. *See generally* Tr. 550-51.

> As to the claim that Dr. Serio's opinion could be rejected because he was not a "treating" physician with respect to Mr. Douglas's psychiatric problem, the ALJ misunderstood Dr. Serio's opinion. Dr. Serio was addressing Mr. Douglas's mental state as it

-15-

> related to the side effects of Interferon treatment, not his general psychiatric conditions of dysthymia, antisocial personality disorder, and borderline personality disorder. Dr. Serio specifically noted that the Hepatitis C treatment was "drastically affecting Terry in his daily life." Tr. 551. This is consistent with Mr. Douglas's testimony. Mr. Douglas testified that he had to give himself and Interferon injection he week, typically on Friday. He would then be "pretty much" debilitated for about four days, meaning he had to lie down because he was nauseous and felt sick to his stomach. After about eight months into treatment he felt sick nearly all the time....
>
> Rather than relying on the opinion of Dr. Serio, the ALJ relied on the opinion of a State agency physician who reviewed the file prior to Mr. Douglas's interferon treatment. Tr. 27. While this opinion may have been accurate with respect to Mr. Douglas's condition prior to Interferon treatment, it says nothing about his condition during and shortly after Interferon treatment. *See generally* Tr. 266-82.

Doc. # 6 at 13-14. The administrative record supports this view.

The Court is also concerned that the ALJ failed to view all of Plaintiff's impairments in combination from January 17, 2005 onward. The Social Security Act requires the ALJ to consider the combined effects that individually may not be severe, but which, in combination, may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988). As the Sixth Circuit has long held, a disability may result from multiple impairments which, when considered alone, would not constitute a disability. *Loy v. Sec'y of Health & Human Servs.,* 901 F.2d 1306, 1310 (6th Cir. 1990). In evaluating Plaintiff's treatment for Hepatitis C and its impact upon Plaintiff's inability to work, the ALJ noted simply that, "the evidence shows that [Plaintiff] took this [Interferon] treatment for eleven months and that the record

did not corroborate serious side effects to the treatment of either a physical or mental nature." Tr. 30. This unsupported conclusion directly conflicts with evidence in the record, discu*ss*ed above, that Plaintiff was unable to work – and, in fact, was nauseous for days at a time – following his weekly Interferon treatments. This aspect of the ALJ's non-disability finding is thus found unsupported by substantial evidence, and merits reversal.

Where, as here, a non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

As recounted herein, proof of disability is great and remand will serve no purpose other than delay. All substantial factual issues have been resolved, and the record reflects that Plaintiff was disabled for the closed period of January 17, 2005 through May 6, 2006.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be **AFFIRMED** from Plaintiff's alleged onset date of October 14, 2002 through January 16, 2005;

2. The Commissioner's non-disability finding be **REVERSED** for the closed period of January 17, 2005 through May 6, 2006;

3. This matter be **REMANDED** to the Commissioner **UNDER THE FOURTH SENTENCE OF 42 U.S.C. §405(g)** for an immediate award of benefits for the closed period of January 17, 2005 through May 6, 2006 as the record overwhelmingly establishes Plaintiff's entitlement to DIB and/or SSI benefits during that closed period; and

4. This case be **TERMINATED** upon the docket of the Court.

August 17, 2011                                     s/ **Michael J. Newman**
                                                    United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).